UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
RAMEEN B. GASERY,

                Plaintiff,

    -against-

KALAKUTA SUNRISE, LLC, ET AL.,

                Defendants.
------------------------------------------------------------------ x

16-CV-510 (ALC)

**OPINION & ORDER**

**ANDREW L. CARTER, JR., District Judge:**

Plaintiff Rameen B. Gasery brings this suit against Defendants Kalakuta Sunrise, LLC, ("Kalakuta"), Fela Broadway, LLC ("FB"), Stephen Hendel ("Hendel"), and John Does 1-10. The Second Amended Complaint ("SAC") pleads seven Causes of Action: (1) Accounting; (2) Breach of Contract; (3) Breach of Fiduciary Duty; (4) Copyright Infringement against FB; (5) Copyright Infringement against Hendel; (6) Declaratory Relief; and (7) Attorney's Fees. Defendants Kalakuta, FB, and Hendel have moved to dismiss the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim and Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction. For the reasons that follow, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## INTRODUCTION

Plaintiff is a photographer and graphic artist who took photographs of a theatrical musical and entered into an agreement with Defendant Kalakuta that governed the intellectual property rights of the photographs. This agreement established that Plaintiff and Kalakuta were co-owners of the copyright to the photographs and provided terms for the sale and licensing of these rights. Plaintiff commenced this action against Defendants based on the alleged violation of this

agreement and copyright infringement after Kalakuta allegedly distributed the photographs to Hendel and Fela Broadway for use in advertising and marketing the musical. Defendants' motion to dismiss proceeds in three parts: (1) challenging Plaintiff's federal copyright infringement claims for failure to state a claim; (2) challenging Plaintiff's breach of fiduciary duty claims for failure to state a claim; and (3) challenging the remaining state-law causes of action for lack of diversity jurisdiction.

In this case, there are two bases for original jurisdiction: first, Federal Question Jurisdiction pursuant to Plaintiff's claims under the Copyright Act, 28 U.S.C. § 1331; and second, diversity jurisdiction pursuant to 28 U.S.C. § 1332. If the Court were to sustain Plaintiff's claims under the Copyright Act, it could exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the remainder of Plaintiff's claims, and Defendants' challenge to the amount-in-controversy would be rendered moot. However, for the reasons discussed below, Plaintiff's claims under the Copyright Act are dismissed. Therefore, while courts generally consider subject matter jurisdiction before turning to other matters, this Court first addresses Plaintiff's Copyright Act claims, and then after dismissing them, turns to whether the Court has diversity jurisdiction over Plaintiff's state law claims. Finally, the Court addresses Plaintiff's state-law breach of fiduciary duty claims.

## BACKGROUND

### I. Factual Background

Plaintiff is a photographer and graphic artist who created photographic images of an actor playing the late Fela Kuti on stage in the theatrical musical *Fela!* ("the Production"). SAC (ECF No. 72) ¶ 8. Starting in January of 2013, the Production, which had previously run on Broadway, toured in several U.S. cities and at Yale University. *Id.* In advertising and promoting these road shows, Defendants disseminated and profited from photographs created by Plaintiff, without

2

informing, providing profit to, or otherwise receiving consent from Plaintiff. *Id.* The images appeared in "playbills, flyers, lobby cards, theater marquees, digital signage, billboards and as posters for sale in theater lobbies." *Id.* at ¶20. Defendants did not account for or compensate Plaintiff for this usage, and "Plaintiff [was] not provided with a copyright attribution of the images . . . providing the false impression that the images published are in the public domain or have otherwise been dedicated to the public." *Id.* at ¶22. Moreover, without Plaintiff's consent or license, Defendants "reproduced, licensed, disseminated and sold copies of the images to third parties whose identity or identities [Plaintiff] is not aware of, but which are listed in the caption as John Does and whose identities will be ascertained through discovery and against who plaintiff reserves the right to further amend the complaint to make further claims." *Id.* at ¶25.

Plaintiff and Kalakuta entered into an agreement on October 4, 2012 which provided that both Plaintiff and Kalakuta have "an undivided fifty percent (50%) interest in and to the copyright and other intellectual property rights of every kind (now or hereafter recognized) in and to each Fela Project Photograph." *Id.* at ¶15; *see* Declaration of Rameen Gasery in Opposition to Defendants' Motion to Dismiss (ECF No. 103) Ex. 2, § 5.1(a) (hereinafter, "October 2012 Agreement"). This agreement also provided Kalakuta the authority to "set the sales/licensing price(s) with regard to the sale, or license other commercial exploitation of the Fela Project Photographs." October 2012 Agreement § 5.1(c). However, in exercising that authority, Kalakuta was required to "consult[] with [Plaintiff] with respect to the material terms and conditions of any proposed agreement with a third party relating to any sale, licensing or exploitation of rights related to such Fela Project Photograph(s)." *Id.* The Agreement also provided Kalakuta non-exclusive rights to use the Fela Project Photographs, but required Kalakuta to "place appropriate copyright notices on the Fela Project Photographs (as well as on any posters, programs and/or other

3

promotional [sic] using or embodying Fela Project Photographs) and take such other steps reasonably required to protect the copyrights and other proprietary rights of [Plaintiff] and [Kalakuta]." October 2012 Agreement § 9.2(c).

The Agreement referenced Hendel and directed Plaintiff to "liaise with and take direction from Steven Hendel ("Hendel") as Hendel deems appropriate." October 2012 Agreement § 1. The Agreement also acknowledged a $15,000 loan from Hendel to Plaintiff and provided terms for repayment of this loan to Hendel before Plaintiff was paid for profits from the licensing, sale, or exploitation of any photographs. *See id.* Finally, the Agreement included an indemnification provision in which Kalakuta agreed to indemnify Plaintiff for all costs and expenses (including attorneys' fees) arising out of or connected to breach or threatened breach of agreement, warranty, or representation by Kalakuta. *See id.* at § 10.2.

## II. Procedural Background

This case was originally before the late Judge Robert W. Sweet. Judge Sweet passed away on March 24, 2019, and this case was reassigned to this Court. ECF No. 95.

On January 22, 2016, Plaintiff filed this action *pro se* against Defendants. ECF No. 2. Plaintiff then filed an Amended Complaint on March 9, 2016. ECF No. 6. Upon the recommendation of Judge Sweet, Plaintiff retained counsel on October 26, 2016. *See* ECF No. 34. Judge Sweet then referred the case to Magistrate Judge Kevin Nathaniel Fox on June 13, 2017. ECF No. 45. A settlement conference was held before Judge Fox on January 10, 2018, at which no settlement was reached. Subsequently, on April 26, 2018, Plaintiff reached a settlement with Defendant Shakespeare Theater, and Judge Sweet entered the Stipulation and Order of Dismissal with Prejudice as to Defendant Shakespeare Theater. ECF No. 63. Plaintiff then filed a Second Amended Complaint on September 19, 2018. ECF No. 74.

4

Upon Judge Sweet's passing, this case was reassigned to this Court on April 8, 2019. On May 8, 2019, this Court dismissed Defendants' pending motion to dismiss as moot, Plaintiff's motion to strike as moot, and Defendants' motion for a continuance. ECF No. 97. This Court Ordered parties to re-file their memoranda and documents in support of and in opposition to Defendants' motion to dismiss. ECF No. 97. Defendants Kalakuta, FB, and Hendel filed the instant motion to dismiss on May 20, 2019. ECF No. 98. Plaintiff filed his opposition to Defendants' motion to dismiss on June 4, 2019. ECF No. 105. Defendants Kalakuta, FB, and Hendel filed their reply on June 11, 2019. ECF No. 108.

**STANDARD OF REVIEW**

"When considering a motion to dismiss for lack of subject matter jurisdiction under Fed R. Civ. P. 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). Where jurisdictional facts are at issue, "'the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'" *Id.* (citing *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)). But, "the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" *Id.* (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

On the other hand, when resolving a motion to dismiss under Fed. R. Civ. P 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id.* at 663.

## DISCUSSION

Defendants' motion to dismiss proceeds in three parts: (1) challenging Plaintiff's copyright infringement claims against Hendel and FB, because Kalakuta, as a co-owner of the copyright, had the authority to grant a license to use the photographs; (2) challenging Plaintiff's breach of fiduciary duty claims against Kalakuta and Hendel, because neither party owed a fiduciary duty to Plaintiff; and (3) challenging the remaining causes of action because the claims do not meet the $75,000 amount-in-controversy requirement for diversity jurisdiction under 28 U.S.C. § 1322. *See* Defendants' motion to dismiss (ECF No. 98) at 5.

For the reasons discussed below, Plaintiff's claims under the Copyright Act. Accordingly, the Court cannot exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the remainder of Plaintiff's claims. However, Plaintiff's claims for accounting, breach of contract, declaratory relief, and attorney's fees do fall within the Court's diversity jurisdiction under 28 U.S.C. § 1332 because they meet the complete diversity and $75,000 amount-in-controversy requirements. Finally, Plaintiff failed to state a claim for breach of fiduciary duty, and those claims are dismissed.

## I. Plaintiff's Copyright Infringement Claims

Plaintiff's Fourth and Fifth Causes of Action are against Defendant FB and Defendant Hendel respectively for copyright infringement pursuant to the Copyright Act, 17 U.S.C. §504.

Copyright infringement occurs when a party violates "the exclusive rights of the copyright owner." 17 U.S.C. § 501(a). A co-owner of a copyright cannot sue another co-owner for infringement. *See Cortner v. Israel*, 732 F.2d 267, 271 (2d Cir. 1984) ("The purpose of an infringement suit is to protect the owner's property interest. It is elementary that the lawful owner of a copyright is incapable of infringing a copyright interest that is owned by him; nor can a joint owner of a copyright sue his co-owner for infringement."). While copyright co-owners cannot convey the interest of other co-owners without express, written consent, "an owner may give a license to someone to exploit the work in some way, provided he owns that particular copyright interest." *Davis v. Blige*, 505 F.3d 90, 99 (2d Cir. 2007). More specifically, "[a] co-owner may grant a *non-exclusive* license to use the work unilaterally, because his co-owners may also use the work or grant similar licenses to other users and because the non-exclusive license presumptively does not diminish the value of the copyright to the co-owners." *Id.* at 100. A co-owner may not, however, issue a *retroactive* license in order to prevent a copyright infringement suit; that is, a co-

7

owner cannot grant a non-exclusive license to a party after that party has used the underlying copyrighted material, because doing so would shield that party from potentially legitimate copyright liability. *See Spinelli v. Nat'l Football League*, 903 F.3d 185, 198 (2d Cir. 2018). Finally, "a licensee is not liable to a non-licensing co-owner for use authorized by the license, because the licensee's rights rest on the license conveyed by the licensing co-owner." *Davis*, 505 F.3d at 100.

Hendel and FB's copyright liability turns on whether they were licensees of Kalakuta, the nature of any licensing agreement (i.e., exclusive or non-exclusive), and the timing of such agreement (i.e., whether it was put in place before or after the alleged use). There are three types of copyright licenses: (1) written; (2) oral; and (3) implied. *See SHL Imaging, Inc. v. Artisan House, Inc.*, 117 F. Supp. 2d 301, 316 (S.D.N.Y. 2000). "An oral license and an implied license can only be non-exclusive." *Id.* Moreover, it rests upon defendants to establish a non-exclusive licensing agreement. *Spinelli v. Nat'l Football League*, 903 F.3d 185, 199 (2d Cir. 2018) ("Because the existence of a license is an affirmative defense, *Bourne*, 68 F.3d at 631, it is a permissible basis for dismissal only 'where the facts necessary to establish the defense are evident on the face of the complaint,' *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013).").

Defendants acknowledge that there was no express, written licensing agreement between Kalakuta and either Hendel or FB. *See* Motion to Dismiss (ECF No. 98) at 11 n.2. Moreover, neither Plaintiff nor Defendants allege that there was an oral licensing agreement between Kalakuta and either Hendel or FB. Thus, the operative question is whether a non-exclusive license can be inferred from the Parties' conduct.

In *Psihoyos v. Pearson Educ., Inc.*, after a thorough canvas of law of implied license, the Court concluded that whether there is an implied license "comes down to whether there was a meeting of the minds between the parties to permit the particular usage at issue." 855 F. Supp. 2d

103, 124 (S.D.N.Y. 2012) (citation and quotation marks omitted); *see SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 167, 192 (S.D.N.Y. 2009) ("The grant of a license may be implied by objective conduct that would permit a reasonable person to conclude that an agreement [to use copyrighted work] has been reached.") (citation and quotation marks omitted). Additionally, the *Psihoyos* court found that the copyrighted works in that case were delivered to the Defendants "with the intent that Defendants copy and distribute them," and that "without a license to use the images in their publications, the images would be of minimal value to Defendants." 855 F. Supp. 2d at 124 (citation and quotation marks omitted).

In the present case, several facts alleged by Plaintiff establish that Kalakuta provided a non-exclusive, implied license to FB and Hendel to use the photographs for the purpose of advertising and marketing the Production. First, the images were taken for the express purpose of their use in advertising and marketing the Production, and they were provided by Kalakuta (a co-owner of the copyright) to Hendel and FB for this very purpose. *See* October 2012 Agreement § 1 ("[Kalakuta] wishes to retain your further services as follows: . . . to assist [Kalakuta] in [its] efforts to plan and to implement said plan to publicize and commercially exploit the Fela Project Photographs."). Not only did the October 2012 Agreement contemplate this use, the only conditions on licensing the photographs were an accounting, consultation on price, and compensation. *Id.* at § 5.1(c).

Second, as Plaintiff claims, Hendel "is the principal, president, chief executive, or has other executive administrative duties regarding defendants Fela Broadway and Kalakuta." SAC ¶ 6. Indeed, Hendel is expressly referenced in the October 2012 Agreement that establishes the terms for licensing and use of the photographs. *See id.* at § 1 ("[Plaintiff] will liaise with and take direction from Steven Hendel ("Hendel") as Hendel deems appropriate."). The symbiotic relationship

9

between Hendel, Kalakuta, and FB alleged in Plaintiff's Complaint indicates that Kalakuta was both aware of, and approved of, Hendel and FB's use of the copyrighted material.

Third, although Plaintiff claims that Kalakuta did not grant an express use license to FB, SAC ¶42, he also alleges that Kalakuta did grant non-exclusive licenses to third parties for the purpose of advertising and promoting the Production. *See* SAC ¶18 ("[A]t no time has Kalakuta consulted plaintiff as regards the sale, licensing or other use of one or more of the images for the Fela road shows or for their uses . . . ."); *id* at ¶25 ("Without plaintiff's consent or license, plaintiff believes that defendants reproduce, licensed, disseminated and sold copies of the images . . . ."); *id* at ¶27 ("[S]aid unauthorized copying and unconsented sale and licensing of the copyrighted works has caused plaintiff to lose the commercial fair market value of his interest . . . ."). This demonstrates Kalakuta's course of conduct in granting non-exclusive use licenses to the photographs for the purpose of advertising and marketing the Production, and further supports the fact that such a license was granted to Hendel and FB.

Although the operative question is whether there was a meeting of the minds between the parties, courts sometimes apply a more stringent test: "Although the Second Circuit has not yet ruled on the precise circumstances under which an implied non-exclusive license will be found, our Circuit has followed the lead of other appeals courts and cautioned that implied non-exclusive licenses should be found "only in 'narrow' circumstances where one party 'created a work at [the other's] request and handed it over, intending that [the other] copy and distribute it." *Weinstein Co. v. Smokewood Entm't Grp., LLC*, 664 F. Supp. 2d 332, 344 (S.D.N.Y. 2009) (quoting *SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc.*, 211 F.3d 21, 25 (2d Cir. 2000)). Defendants satisfy even this more stringent test. The photographs were created for use in advertising and promoting the *Fela!* Broadway musical, as agreed to by Plaintiff and Kalakuta,

*see* October 2012 Agreement § 1; the photographs were handed to Hendel and FB by Kalakuta, a co-owner of the copyright, *see* SAC ¶20; and they were handed over with the intent that Defendants Hendel and FB copy and distribute them in an effort to promote and advertise for the Production, *see id.*

Plaintiffs analogize this case to *Spinelli*, where the Second Circuit recently rejected defendants' argument that they had impliedly licensed copyrighted photographs. *Spinelli v. Nat'l Football League*, 903 F.3d 185 (2d Cir. 2018). While the facts of *Spinelli* are similar to those here—namely, the court was dealing with claims of copyright infringement after the Associated Press ("AP") provided the National Football League ("NFL") with copyrighted images taken by third party photographers—the case is distinguishable. In *Spinelli*, the course of conduct between AP and the NFL was "plainly inconsistent with the notion that . . . AP had already impliedly licensed the NFL to use Plaintiffs' photographs." *Id.* This led the *Spinelli* court to conclude that "Defendants' claim of an implied license is simply a post-hoc rationalization meant to excuse the NFL's infringing uses . . . ." *Id.* In this case, Defendants' conduct and relationships—including Hendel's ownership and involvement with Kalakuta and FB, and the contemplated and continued use of the photographs to promote the Production—support finding that Kalakuta impliedly licensed Hendel and FB to use Plaintiffs' photographs before they were used on the road tour.

Based on the course of conduct between the Parties, the Court finds that Kalakuta created an implied, non-exclusive license of the copyrighted material to both Hendel and FB.[1] Given this non-exclusive license, which Kalakuta had the authority to grant as a co-owner of the copyright,

---

[1] Although "contractual language can create or negate an implied license," *Psihoyos*, 855 F. Supp. at 127, here, the October 2012 Agreement does not restrict the ability of either party to license the photographs. If anything, the Agreement explicitly contemplates licenses and discusses a schema for payment and fees related to any licensing. Thus, the implied license is not undercut by the October 2012 Agreement, and any restrictions on licensing in the agreement that Defendants did not adhere to should be litigated under Plaintiff's breach of contract claim.

Plaintiff cannot bring suit for copyright infringement against either Hendel and FB. *Davis*, 505 F.3d at 100 ("[A] licensee is not liable to a non-licensing co-owner for use authorized by the license, because the licensee's rights rest on the license conveyed by the licensing co-owner.").[2] Accordingly, Plaintiff's Fourth and Fifth Causes of Action are dismissed.

## II. Plaintiff's Remaining State Law Claims

Plaintiff's remaining causes of action allege claims for accounting, breach of contract, declaratory relief, breach of fiduciary duty,[3] and attorney's fees[4]. Since the copyright infringement claims have been dismissed, the only remaining basis for jurisdiction is diversity jurisdiction pursuant to 28 U.S.C. § 1332. Defendants allege that Plaintiff has not satisfied the amount-in-controversy ("AIC") requirement of § 1332.

Section 1332(a) requires both the complete diversity of parties and an amount-in-controversy in excess of $75,000. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (citing 28 U.S.C. § 1332(a)). "A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount." *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (citation and quotation marks omitted). "This burden is hardly onerous,

---

[2] Defendants bear the burden of showing the existence of a licensing agreement, but plaintiffs bear the burden of showing that a defendant's use of the copyright exceeded any established licensing agreement. *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir.1995). Here, Plaintiff does not allege facts indicating that Hendel or FB used the photographs in a way that exceeded their implied, non-exclusive license.

[3] In Section III of this Opinion and Order, the Court dismisses Plaintiff's breach of fiduciary duty claims. For this reason, the breach of fiduciary duty claims are not discussed in calculating the amount-in-controversy.

[4] Plaintiff requests attorney's fees under both the Copyright Act and the October 2012 Agreement. As discussed above, Plaintiff's copyright infringement claims are dismissed, and consequently Plaintiff cannot claim attorney's fees under the Copyright Act. However, Plaintiff makes independent claims for attorney's fees based on the indemnification provision of the October 2012 Agreement. *See* October 2012 Agreement § 10.2.

however, for we recognize a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Id.* (citation and quotation marks omitted). "[T]he legal impossibility of recovery must be so certain as virtually to negat[e] the plaintiff's good faith in asserting the claim." *Chase Manhattan Bank, N.A. v. Am. Nat. Bank and Trust Co. of Chicago*, 93 F.3d 1064, 1070–71 (2d Cir.1996) (quoting *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 785 (2d Cir. 1994)). However, defendants can overcome this rebuttable presumption if they can show to "a legal certainty that the plaintiff could not recover the amount alleged or that the damages alleged were feigned to satisfy jurisdictional minimums." *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006). Defendants are not limited to the pleadings in overcoming this presumption, and a court "may look outside the pleadings to over evidence on the record." *United Food & Commercial Workers Union Local 919, AFL-CIO v. CenterMark Props. Meriden Square Inc.*, 30 F.3d 298, 305 (2d Cir. 1994). Finally, attorney's fees can be counted towards satisfying the amount-in-controversy threshold only if "they are recoverable as a matter of right pursuant to statute or contract." *Ryan v. Legends Hospitality, LLC*, 2012 WL 3834088, at *2 (S.D.N.Y. Aug. 1, 2012).

Defendants allege that Plaintiff has not satisfied the $75,000 amount-in-controversy jurisdictional requirement. Although Plaintiff does not allege a dollar amount in his Second Amended Complaint, in his Memorandum in Opposition to the Defendants' motion to dismiss, Plaintiff alleges a dollar amount of $107,001. *See* Opp. Memo. at 14. Plaintiff reaches this number by calculating the total number of audience seats at the venues in which the *Fela!* Production played (which totaled 214,002); valuing the fair market advertising and promotional value of the photographs at $1.00 per seat (thus, $214,002); and halving the total amount to represent Plaintiff's interest in the copyrighted material (thus, $107,001). *See id.* Plaintiffs engage in this calculation

because "Defendants fail to disclose [the number of seats] regarding the potential audience and fail to provide ticket prices or the gross revenues they received from the performances which the advertising and merchandise sales are connected to." *Id.* at 13. In Defendants' Declaration in Further Support of the motion to dismiss, Defendants argue that "[a]ssuming arguendo that Plaintiff's valuation of the monies owed to Plaintiff by reason of this calculation and in the amount of $107,001 is accurate, Plaintiff still does not reach the $75,000 'minimum' by reason of contractual offsets (e.g., the monies owed to Kalakuta) provided in the October 2012 Agreement against any the portion a fee paid to Plaintiff." Declaration of Defendants' Counsel in Further Support of Motion to Dismiss (ECF No. 107) at 8. However, even assuming Defendants' argument is true, the only contractual offset Defendants have alleged are a $15,000 loan to Plaintiff and an indeterminate amount of profits made by Plaintiff at the "Gallery Exhibition" held in Oakland in June and July 2013. *See id.* Moreover, Defendants concede that Plaintiff is contractually owed attorney's fees under the October 2012 Agreement, *see id* at 6, and since these fees are contractually owed, Plaintiff's attorney's fees at the time of the filing of the Second Amended Complaint would be attributable to Defendant. *See Givens v. W.T. Grant Co.*, 457 F.2d 612, 614 (2d Cir. 1972).

Defendants make several other arguments to support the claim that Plaintiffs have not reached the amount-in-controversy requirement. *See* Memorandum of Law in Support of Motion to Dismiss (ECF No. 100) at 12–16. These arguments, although plausible and potentially persuasive at a later stage of litigation, are unable to establish with "legal certainty that plaintiff could not recover the amount alleged." *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006). Here, Plaintiff has sufficiently alleged that there is a "reasonable probability" that his claims meet the $75,000 jurisdictional requirement. At this stage in litigation, the bar is

low, and the presumption in favor of good faith is strong. Since Plaintiff has alleged an amount—namely, $107,001—that is plausible, this Court denies Defendants' motion to dismiss Plaintiff's remaining causes of action.

### III. Plaintiff's Breach of Fiduciary Duty Claims

Plaintiff's Third Cause of Action is against Kalakuta and Hendel for breach of fiduciary duty given Kalakuta's relationship as a co-owner of the copyrighted photographs and Hendel's status as a "majority owner, officer and/or executive" of Kalakuta. SAC ¶38. This claim must be dismissed for three reasons: first, Plaintiff does not sufficiently allege that Kalakuta had a fiduciary duty towards Plaintiff; second, Plaintiff does not sufficiently allege that Hendel had a fiduciary duty to or joint venture relationship with Plaintiff; and third, the breach of fiduciary duty claim is duplicative of Plaintiff's breach of contract claim.

"[I]n order to survive a motion to dismiss a claim for breach of fiduciary duty, the plaintiff must set forth specific facts constituting the alleged relationship with sufficient particularity to enable the court to determine whether, if true, such facts could give rise to a fiduciary relationship." *World Wrestling Entm't, Inc. v. Jakks Pacific, Inc.*, 530 F.Supp.2d 486, 504 (S.D.N.Y. 2007) (citation omitted). There are five elements to establishing a joint venture pursuant to New York law: "(1) two or more persons must enter into a specific agreement to carry on an enterprise for profit; (2) their agreement must evidence their intent to be joint venturers; (3) each must make a contribution of property, financing, skill, knowledge, or effort; (4) each must have some degree of joint control over the venture; and (5) there must be a provision for the sharing of both profits and losses." *Dinaco, Inc. v. Time Warner, Inc.*, 346 F.3d 64, 67–68 (2d Cir. 2003) (citation omitted). "With respect to a fiduciary duty arising from a contractual agreement, being a party to a contract does not itself impose a fiduciary duty. Rather, this duty must arise from a position of trust or

special confidence . . . that impose[s] obligations beyond the express agreements between the parties." *Poon v. Roomorama, LLC*, 2009 WL 3762115, at *3 (S.D.N.Y. Nov. 10, 2009) (quotation marks and citations omitted). "[T]here are traditionally no fiduciary duties owed between joint authors or copyright holders . . . . Instead the only duty that exists between joint authors is a duty to account for profits from the use or licensing of their joint work." *Mills v. Cottrell*, 2006 WL 3635325, at *5 (S.D.N.Y. Dec. 8, 2006). Finally, "[a] cause of action for breach of fiduciary duty which is merely duplicative of a breach of contract claim cannot stand." *Poon v. Roomorama, LLC*, 2009 WL 3762115, at *3 (S.D.N.Y. Nov. 10, 2009) (citation omitted).

In the present case, Plaintiff does not set forth facts sufficient to establish that a fiduciary relationship could exist between himself and Kalakuta. Co-owners of a copyright do not have a fiduciary duty to each other based on that co-ownership itself. *See Mills*, 2006 WL 3635325, at *5 (S.D.N.Y. Dec. 8, 2006). There are no additional facts in Plaintiff's Complaint, nor in the October 2012 Agreement, that indicate that Plaintiff and Kalakuta intended to create a fiduciary duty or a joint venture amongst themselves. Moreover, there are no allegations of control, no provisions for sharing of profits and losses in the October 2012 Agreement, and no indicated intent to be joint venturers. *See Dianco Inc.*, 346 F.3d at 67–68.

Similarly, Plaintiff does not set forth facts sufficient to establish that a fiduciary relationship could exist between himself and Defendant Hendel. Plaintiff asserts that he "reposed his trust specifically in defendant Hendel" who then gifted away or wasted the assets that were jointly owned. Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss (ECF No. 105), at 21 (hereinafter, "Opp. Memo"). This bare allegation of "trust" is insufficient to establish a joint venture under New York law. There is evidence in Plaintiff's Complaint and the October 2012 Agreement that establishes some elements of a joint venture under New York law.

16

For example, the October 2012 Agreement references Hendel's control over Plaintiff, October 2012 Agreement §1, and that Hendel both loaned Plaintiff $15,000 and acted as a guarantor of Plaintiff's apartment lease, October 2012 Agreement §4.2. However, the elements of a joint venture have not been sufficiently pled. Plaintiff and Hendel did not enter into a "specific agreement," there is no evidence of an intent to be joint venturers, and there is no provision for the sharing of profits and losses. *See Dianco Inc.*, 346 F.3d at 67–68.

Even if Plaintiff's allegations were sufficient to establish a fiduciary duty between himself and either Hendel or Kalakuta, Plaintiff's claim for breach of fiduciary duty is entirely duplicative of his breach of contract claim. "A plaintiff must demonstrate a legal duty separate from the duty to perform under the contract for a fiduciary duty to exist. *Banco Espirito Santo de Investimento, S.A. v. Citibank, N.A.*, 2003 WL 23018888, at *15 (S.D.N.Y. Dec. 22, 2003) (citation and quotation marks omitted); *see also Uni-World Capital, L.P. v. Preferred Fragrance, Inc.*, 43 F. Supp. 3d 236, 244 (S.D.N.Y. 2014) ("Where a fiduciary duty is based upon a comprehensive written contract between the parties, a claim for breach of fiduciary duty is duplicative of a claim for breach of contract and must be dismissed.") (citation and quotation marks omitted). "A breach of fiduciary duty claim is duplicative when it is based on allegations of fiduciary wrongdoing that are expressly raised in plaintiff's breach of contract claim." *N. Shipping Funds I, LLC v. Icon Capital Corp.*, 921 F. Supp. 2d 94, 105 (S.D.N.Y. 2013) (citation and quotation marks omitted). Plaintiff's allegations of fiduciary wrongdoing against Hendel and Kalakuta are based on the same underlying conduct—the use and distribution of the copyrighted photographs—by the same parties and in regard to an alleged fiduciary duty that was created by same underlying contract.

Accordingly, given that Plaintiff has not established either a joint venture or a fiduciary relationship between himself and either Kalakuta or Hendel, and given that Plaintiff's breach of

fiduciary duty claims are based on the same underlying conduct and contractual provisions as Plaintiff's breach of contract claims, Plaintiff's Third Cause of Action is dismissed.

## CONCLUSION

Accordingly, Defendants' motion to dismiss Plaintiff's copyright infringement and breach of fiduciary duty claims is **GRANTED**. Defendants' motion to dismiss Plaintiff's remaining claims is **DENIED**. Thus, at present, only Plaintiff's state law and contractual claims for accounting, breach of contract, declaratory relief, and attorney's fees remain against Defendants Hendel, FB, and Kalakuta. The Clerk of Court is respectfully directed to terminate ECF No. 98.

**SO ORDERED.**

**Dated:** November 26, 2019
New York, New York

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**